Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000522
14-JUN-2019
07:57 AM

NO. CAAP-18-0000522

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant, v.
PEKELO K.K. MELENDEZ, Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-17-0000779)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Hiraoka, JJ.)

Plaintiff-Appellant State of Hawai'i (**State**) appeals from the May 29, 2018 Order Granting Motion to Dismiss for De Minimis Violation of Dismissal (**Dismissal Order**), which was entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] in favor of Defendant-Appellee Pekelo K. K. Melendez (**Melendez**).

Melendez was charged with Promoting a Dangerous Drug in the Third Degree in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (2014).[2] Prior to trial, Melendez filed a Motion to

---

[1] The Honorable Todd W. Eddins presided.

[2] HRS § 712-1243 provides:

> **§ 712-1243 Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a
> (continued...)

Dismiss for De Minimis Violation (**Motion to Dismiss**), which the Circuit Court granted, dismissing the charge with prejudice. On appeal, the State requests that this court vacate the Dismissal Order and remand the case for trial.

I.   BACKGROUND

On June 14, 2017, by Felony Information, the State charged Melendez with having violated HRS § 712-1243 on or about May 23, 2017. On May 14, 2018, Melendez filed a Motion to Dismiss,[3] arguing that, based on the amount of the controlled substance in his possession and the relevant attendant circumstances, the charge should be dismissed as a *de minimis* violation pursuant to HRS § 702-236 (2014).[4]

---

[2](...continued)
> dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
> (2)   Promoting a dangerous drug in the third degree is a class C felony.

[3]   Also on May 14, 2018, Melendez filed a motion to dismiss on the basis that trial had not commenced within six months of accrued time from the filing of the Felony Information, in violation of Hawai'i Rules of Penal Procedure Rule 48. At the hearing on the motion, the State represented that it "had planned to stipulate to the [Rule 48] violation" but "would be arguing for dismissal without prejudice." The Circuit Court did not enter an order or otherwise rule with respect to the Rule 48 motion, and neither party raises this issue on appeal. We note that absent factual findings as to whether the includable time resulted in a Rule 48 violation, the appellate court will not review the issue. See, e.g., State v. Hutch, 75 Haw. 307, 330-31, 861 P.2d 11, 23 (1993); State v. Fennelly, CAAP-13-0001308, 2015 WL 9594360, *1-*2 (Haw. App. Dec. 28, 2015) (SDO).

[4]   HRS § 702-236 provides:

> § 702-236 **De minimis infractions.** (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
> (a)   Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense;
> (b)   Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(continued...)

During a hearing on the Motion to Dismiss, the parties stipulated to the transcript testimony of Dr. George Read (**Dr. Read**). The parties further stipulated to the facts as presented in defense counsel's declaration, specifically that (1) Melendez was "taken into custody for a [Hawaii's Opportunity Probation with Enforcement (**HOPE**)] violation," (2) during a custodial search, a baggie containing a small amount of white powdery substance was discovered in Melendez's right pocket, (3) no lighter or other paraphernalia was located during the search, and (4) the bag was later analyzed as containing a substance weighing .005 grams and containing cocaine. Upon inquiry from the court, the State also stated that there was "no indication that [Melendez] was under the influence of an intoxicant" at the time of Melendez's arrest. No other testimony or evidence was offered or admitted.

In support of the motion, Melendez argued that, based on the testimony of Dr. Read, the Circuit Court could find that .005 grams of a substance containing cocaine "is a non-usable or sellable amount." Melendez argued that because the substance was found "in his pocket with no lighter, no other paraphernalia to use it," the charge should be dismissed as a *de minimis* violation of HRS § 712-1243. In opposition, the State argued that .005

---

[4](...continued)
      (c)    Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.
      (2)    The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

grams of cocaine is "above an infinitesimal amount" and thus the charge should not be dismissed on *de minimis* grounds.

Following the arguments by the parties, the Circuit Court granted the motion and dismissed the charge with prejudice, and then entered the Dismissal Order the same day. In the Dismissal Order, the Circuit Court found and concluded as follows, in pertinent part:

### Factual Findings

On May 23, 2017, [Melendez] violated the terms and conditions of his HOPE probation.[5]

Melendez was taken into custody at the First Circuit Court's Adult Client Services Section, located at 777 Punchbowl Street.

A Department of Public Safety deputy sheriff lawfully searched him. The search uncovered a ziplock type baggie containing a white powdery substance from Melendez's right side pocket.

No items typically associated with drug use, such as a lighter, pipe, or head-shoppy objects found at some neighborhood convenience or liquor stores, were retrieved as a result of the search.

Melendez was not observed or known to be under the influence of any illicit substance at the time of his detention.

Subsequent scientific analysis revealed that the white powdery object within the baggie contained cocaine. The object weighed .005 grams. There was no analysis as to the quantity of cocaine comprising the .005 grams.

. . . .

### Legal Conclusions

. . . .

Although Melendez's alleged possession of cocaine is five times the amount at issue in [State v. Viernes, 92 Hawai'i 130, 988 P.2d 195 (1999)], the 500% increase in the cocaine possessed by Melendez totaled only 5/1000 of a gram. Viernes supports an HRS § 702-236 dismissal.

. . . .

---

[5] The Circuit Court took judicial notice that Melendez was on probation for having previously committed the offense of Promoting a Dangerous Drug in the Third Degree, but the court did not cite a full case number for those proceedings.

The Hawai'i Penal Code quantifies illegal possession by measurement in ounces (or grams) – not tenths of grams, or hundreds [sic] of grams, or thousandths of grams. It is clear that under the circumstances, and considering the statutory scheme as a whole, Melendez's possession of .005 grams of a substance containing cocaine eclipses the "any amount" element of HRS § 712-1243. Melendez's possession did not actually cause or threaten the harm sought to be prevented by the law. But even if it did, it did so only to an extent too trivial to warrant the condemnation of conviction.

"All the relevant circumstances" must be considered with respect to assessing a *de minimis* infraction claim. See, e.g., [State v. Vance, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979)]. . . . "[W]ith respect to the amount of drugs possessed, the proper inquiry in *de minimis* cases is *whether the amount possessed could produce a pharmacological or physiological effect.*" . . . .

The parties stipulated to the 1999 expert testimony of Dr. George Read. The court is uncertain as to the continued reliability of the [twentieth] century opinions by this expert. It considers, but discounts the expert testimony.

More persuasive [are] the relevant circumstances surrounding the recovery of the cocaine. [Melendez] is the true "expert" with regard to the pharmacological or physiological effect of the substance found in his pocket. . . . It is manifest that in Melendez's collection of experiences, beliefs, and knowledge as a cocaine consumer, there was an inability to use or sell the infinitesimal quantity of white specks in the baggy within his pocket. . . . Simply put, if the microscopic traces of cocaine would have resulted in a "high," or had a pharmacological or physiological effect, it is reasonable to conclude that Melendez (or someone else) would have ingested the barely discernable white powdery substance.

Further, it is preposterous to suggest that .005 grams of a substance containing cocaine is capable of sale as a narcotic.
. . . .

Finally, there were not any items typically associated with drug use that were uncovered in the custodial search of Melendez. In the relevant circumstance evaluation of this fact, along with the observation that Melendez was not under the influence of any drug, also mightily favor a *de minimis* violation.

(Footnotes omitted; emphasis added; format altered).

II. POINTS OF ERROR

On appeal, the State contends that the Circuit Court abused its discretion in granting the Motion to Dismiss by: (1) erroneously interpreting HRS § 712-1243 and concluding that the critical inquiry is whether the illicit drug was usable or

saleable; and (2) erroneously concluding that .005 grams of cocaine was an amount incapable of producing a pharmacological or physiological effect and that the surrounding circumstances of Melendez's conduct "mightily favored" dismissal.

III. APPLICABLE STANDARDS OF REVIEW

"'[A] court's decision under HRS § 702-236 is reviewed for abuse of discretion.'" State v. Viernes, 92 Hawai'i 130, 133, 988 P.2d 195, 198 (1999) (quoting State v. Ornellas, 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App. 1995)). "'The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" State v. Kealoha, 142 Hawai'i 46, 55, 414 P.3d 98, 107 (2018) (quoting Allstate Ins. Co. v. Pruett, 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008)). "In other words, '[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" Id. (quoting Allstate Ins. Co., 118 Hawai'i at 179, 186 P.3d at 614).

"Before a trial court can address whether to dismiss a prosecution on de minimis grounds, it must first make factual determinations regarding both the conduct alleged and the attendant circumstances, which are reviewed under the clearly erroneous standard." State v. Carmichael, 99 Hawai'i 75, 79, 53 P.3d 214, 218 (2002) (citing Viernes, 92 Hawai'i at 133, 988 P.2d at 198). A finding of fact is clearly erroneous when: "'(1) the record lacks substantial evidence to support the finding, or (2)

despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.'" State v. Sanford, 97 Hawai'i 247, 253, 35 P.3d 764, 770 (App. 2001) (quoting State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)).

"A trial court's conclusions of law are reviewed *de novo*, under the right/wrong standard of review." State v. Kido, 109 Hawai'i 458, 461, 128 P.3d 340, 343 (2006) (citations omitted). "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (internal quotation marks and citations omitted).

The Hawai'i Supreme Court has stated that "it is within the province of the trier of fact to weigh the evidence and to assess the credibility of the witnesses, and this court will refrain from interfering in those determinations." Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd. 100 Hawai'i 97, 117-18, 58 P.3d 608, 628-29 (2002) (citation omitted).

IV.    DISCUSSION

    A.    Legal Standard for *De Minimis* Drug Violation

        The State argues that the Circuit Court erred in applying an incorrect legal standard for its *de minimis* determination. Specifically, the State argues that the Circuit Court erroneously interpreted HRS § 712-1243 and improperly

applied a useable or saleable quantity standard to the amount of cocaine in Melendez's possession. This argument lacks merit.

The Hawai'i Supreme Court has held that "the direct and unambiguous language of [HRS § 712-1243] prohibits [the Court] from judicially amending the provision to include a useable quantity standard" and thus "the State must prove only the knowing possession of a dangerous drug in any amount" in order to obtain a conviction. State v. Vance, 61 Haw. 291, 307, 602 P.2d 933, 944 (1979). Notwithstanding this holding, a court "may dismiss a prosecution if, considering all the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction" pursuant to HRS § 702-236. Id.; Viernes, 92 Hawai'i at 135, 988 P.2d at 200 ("[C]onduct may be so harmless that, although it technically violates HRS § 712-1243, it is nonetheless de minimis pursuant to HRS § 702-236.").

With regards to the harm sought to be prevented by HRS § 712-1243, the Hawai'i Supreme Court has repeatedly recognized that "Hawaii's drug laws were intended to control the use and sale of illicit drugs." State v. Fukagawa, 100 Hawai'i 498, 504-05, 60 P.3d 899, 905-06 (2002); Sanford, 97 Hawai'i at 256, 35 P.3d at 773; Viernes, 92 Hawai'i at 134, 988 P.2d at 199; Vance, 61 Haw. at 307, 602 P.2d at 944. However, "if the quantity of a controlled substance is so minuscule that it cannot be sold or used in such a way as to have any discernible effect on the human body, it follows that the drug cannot lead to abuse." Fukagawa,

100 Hawai'i at 513, 60 P.3d at 914; Viernes, 92 Hawai'i at 134, 988 P.2d at 199. Therefore, "with respect to the amount of drugs possessed, the proper inquiry in *de minimis* cases is whether the amount possessed could produce a pharmacological or physiological effect." Fukagawa, 100 Hawai'i at 506, 60 P.3d at 907.

Here, the Circuit Court recognized that "the proper inquiry in *de minimis* cases is whether the amount possessed could produce a pharmacological or physiological effect" and proceeded to address the facts of the case utilizing that standard. Thus, while the Circuit Court may not have accurately described the legal standard for a conviction under HRS § 712-1243, it did not employ an erroneous legal standard for a *de minimis* determination. See Viernes, 92 Hawai'i at 134, 998 P.2d at 199. ("Under certain circumstances, [a *de minimis* violation] may, as Vance suggests, trump the 'any amount' requirement of HRS § 712-1243."). Accordingly, the State's first and second points of error are rejected.

B.  Whether Melendez's Conduct Warranted Dismissal

The State also contends that the Circuit Court abused its discretion in ultimately concluding that Melendez met his burden to show that his conduct constituted a *de minimis* violation. Specifically, the State asserts that the Circuit Court erroneously determined that possession of .005 grams of cocaine was an amount that could not produce a pharmacological or physiological effect and that the surrounding circumstances of Melendez's conduct "mightily favor[ed]" dismissal.

As noted above, the harm sought to be prevented by HRS § 712-1243 is the use of illicit substances and "their sale or transfer for ultimate use." Vance, 61 Haw. at 307, 602 P.2d at 944. As the movant in *de minimis* cases, the defendant bears the burden of proof on the issue and must present evidence that the amount possessed was incapable of producing a pharmacological or physiological effect. State v. Hironaka, 99 Hawai'i 198, 209, 53 P.3d 806, 817 (2002) (affirming the trial court's denial of defendant's *de minimis* motion to dismiss when the defendant adduced no evidence that the amount of methamphetamine he was charged with possessing was incapable of producing a pharmacological or physiological effect or was not saleable); State v. Balanza, 93 Hawai'i 279, 283-85, 1 P.3d 281, 285-87 (2000) (holding that the trial court did not abuse its discretion in denying defendant's motion to dismiss on *de minimis* grounds when his expert witness' testimony was inadmissible). Additionally, "the defendant must address both 'the nature of the conduct alleged and the nature of the attendant circumstances.'" Fukagawa, 100 Hawai'i at 507, 60 P.3d at 908 (quoting HRS § 702-236(1)) (emphasis added). Dismissal of a charge without any indicators from the surrounding circumstances constitutes an abuse of discretion. Id.

Here, the Circuit Court appears to have recognized the harm sought to be prevented by HRS § 712-1243 as the use of drugs and their sale or transfer for ultimate use. However, the Circuit Court's finding that the .005 grams of a substance containing cocaine in Melendez's possession was incapable of

10

producing a pharmacological or physiological effect was clearly erroneous because it was not supported by the evidence. Specifically, the Circuit Court "discount[ed] the stipulated testimony of Dr. Read," based on the age of the testimony.[6] Instead, the Circuit Court declared that Melendez was the "true expert" concerning the pharmacological and physiological effect of the cocaine in his pocket and relied upon "Melendez's collection of experiences, beliefs, and knowledge as a cocaine consumer" to find that Melendez would have already ingested the substance in his possession if it were capable of producing a "high."

However, there was no evidence presented as to Melendez's status "as a cocaine user" or of his "experiences, beliefs, and knowledge" as such in order to support an inference that Melendez would have ingested any amount of cocaine in his possession that was capable of producing a "high." Melendez did not testify and was not offered or established as an expert with regards to the pharmacological or physiological effects of cocaine. The court expressly discounted the expert testimony of Dr. Read based on its staleness, thus leaving the record without any evidence to support the Circuit Court's finding that .005 grams of cocaine could not produce a pharmacological or physiological effect, which is the necessary inquiry with respect

---

[6]    We note that Dr. Read's testimony pertains to methamphetamine usage. The State acknowledges that Dr. Read testified that "pharmacologically methamphetamine is a potent central nervous system stimulant . . . that produces many effects indistinguishable from those of cocaine[.]" However, as acknowledged by Melendez on appeal, Dr. Read did not testify as to the amount of cocaine that was required to produce a pharmacological or physiological effect.

to the amount of drugs possessed. <u>Fukagawa</u>, 100 Hawaiʻi at 506, 60 P.3d at 907; <u>Hironaka</u>, 99 Hawaiʻi at 209, 53 P.3d at 817. Although the Circuit Court made other findings as to the surrounding circumstances of Melendez's conduct, we cannot conclude that the Circuit Court's inclusion of and reliance on its erroneous finding was harmless error. <u>See</u> <u>State v. Enos</u>, CAAP-18-0000407, 2019 WL 1923705, *5 (Haw. App. Apr. 30, 2019) (SDO). Accordingly, the Dismissal Order must be vacated.

V.    CONCLUSION

Based on the foregoing, the Circuit Court's May 29, 2018 Dismissal Order is vacated and this case is remanded for further proceedings.

DATED: Honolulu, Hawaiʻi, June 14, 2019.

On the briefs:

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

12